**BRYANT & DETWILER CO. v. UNITED STATES.**

No. J–389.

Court of Claims.

June 1, 1931.

482

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., and Roswell F. Magill, of New York City, on the brief), for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

GREEN, Judge.

This is an action to recover an alleged overpayment of income and excess profits taxes for the year 1918 in the amount of $26,879.85. The action arises out of the refusal of the Commissioner of Internal Revenue to allow any deduction for the amortization of a building erected in 1918 as part of a plant for the manufacture of magazines for automatic pistols, pursuant to a contract made with the United States and used for that purpose until shortly after the Armistice. The building cost $77,362.13, of which the defendant contributed $6,000, paid to the company which used the building and turned over to the plaintiff. The contract was canceled after the Armistice and the building was then not worth to the plaintiff in excess of $30,890. In an application for a refund of part of the taxes for said year, the plaintiff

claimed to be entitled to a deduction of the difference between the net war-time cost, $71,362.13, and the net worth after the war, $30,890. The deduction claimed was therefore $40,472.13.

It is conceded by defendant that the building was erected for the production of articles contributing to the prosecution of the World War, and the decision to be rendered turns upon the construction of the statute with reference to the amortization of war facilities in the computation of income of a corporation as applied to the facts in the case under consideration, which are practically undisputed.

This statute, among other things, provides in section 234 (a) of the Revenue Act of 1918 (40 Stat. 1078): "(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war * * * there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities * * * as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income."

More specifically the point is whether, under the statute, amortization can be granted to a corporation which constructs a building and does not use it for the production of war material, but leases it to another concern.

The evidence shows that the plaintiff constructed the building for another corporation, the Ferro Stamping & Manufacturing Company, which used it in the manner stated above. The Ferro Company had contracted with the government for the production of war material but had no building suitable for the performance of its contract with the government. It was therefore arranged between the Ferro Company and the plaintiff that plaintiff should construct a suitable building and lease it to the Ferro Company, which it did, the lease being for a period of five years and including two other buildings which had theretofore been used by the Ferro Company.

It is contended on behalf of plaintiff that the law does not require that the taxpayer who constructs the building shall personally have been engaged in the production of war material in order to be entitled to the benefit of the amortization provision, but that the only requirement is that the building shall

have been constructed for such purpose. It is said also that no such requirement need be implied in order to protect the government. On behalf of the defendant, it is contended that the words "production of articles contributing to the prosecution of the present war" refer only to production by the taxpayer, and that unless the building was used by the taxpayer for such production no allowance can be made.

The language of the statute is ambiguous, and we shall have to look to the circumstances under which the statute was enacted and to which it was intended to apply in order to determine the intent of Congress in enacting it. The Revenue Act of 1918 was passed shortly after the Armistice had been declared. It is a matter of common knowledge that the war ended much sooner than was generally expected. As a consequence, a large number of contractors found themselves with buildings and machinery on hand acquired or constructed for the purpose of manufacturing war material, but which was of little value after the war. Under the law as it stood at the time of the Armistice, there was no provision for an allowance on account of this situation. The contractors were unable to use the property as they had expected and intended, and under the circumstances would sustain a loss against which the law had made no provision, although the act which brought about the loss was required by their contracts with the government. But it was the corporations which contracted to produce war material which as a rule sustained this loss. If they arranged with some other party to construct a building to be leased for the purpose of enabling them to perform their contracts, presumably the party that constructed the building would prescribe such terms in the lease as would protect him from loss. At least there was no reason why he should not do so, as he could construct a building or refuse to build it, at his pleasure, not having made any contract with the government. In this particular instance the lease was made for five years, and regardless of whether the contract of the Ferro Company was terminated by reason of the ending of the war the rent had to be paid. The plaintiff and other parties who constructed buildings to be so used took no risk upon the termination of the contract with the government or upon its being profitable or otherwise. It made no difference to them whether the war was terminated before their leases expired, except as it might make to the public generally. We can see no good reason why those who merely con-

484

structed buildings and leased them should receive this allowance for amortization, and in view of the situation, as stated above, we do not think Congress intended that they should.

In this view we are supported by the opinion of the Board of Tax Appeals in Appeal of Bryant & Detwiler Co., 3 B. T. A. 15, being the same case when it was heard before the board, and also by Appeal of Moore Investment Co., 2 B. T. A. 579, in which it was said: "The purpose of the taxpayer in erecting the building in question was not to produce articles contributing to the prosecution of the war, but to rent it to a concern which was engaged in manufacturing or producing such articles. In other words, it was an investment proposition."

It was not only an investment proposition but one in which the profit could be clearly determined from the start. The plaintiff's situation was very different from those who had made contracts with the government, and in order to perform them were obliged to construct or acquire buildings upon which they sustained a loss. In such case, the loss was sustained by reason of the contract to manufacture war material for the government. Even where the buildings were leased for this purpose, the loss, as a rule, would fall upon the lessee who used them, and not upon the lessor.

We do not find it necessary to determine whether the case of Belfast Investment Co. v. Commissioner, 17 B. T. A. 213, conflicts with the holding of the Board in the case last cited and that of Bryant & Detwiler Co., supra, as our conclusion in any event is that its decisions in the Bryant & Detwiler Co. Case and the Moore Investment Co. Case were correct.

We think that if a corporation constructed a building and sold it outright to another corporation, which used it to produce war material, no one would contend that the corporation constructing the building could be allowed amortization. On the contrary, it would be allowed to the corporation which purchased and used it. It is true that the statute is specific as applied to an instance of this kind, but we think the principle is the same. It is the risk and expense resulting from taking a contract to produce war materials for which Congress intended to allow compensation when new buildings were required for the performance of the contract, and we do not think it intended to make allowances on account of matters which, although they may have resulted indirectly from the war, were not brought about by taking a contract to produce war materials.

Our conclusion is that the plaintiff's petition must be dismissed, and it is so ordered.